## CIRCUIT COURT OF THE CITY OF RICHMOND

Westmoreland-LG&E Partners

v.

Virginia Electric and Power Co.

Case No. LX-2859-1

BY JUDGE MELVIN R. HUGHES, JR.

August 9, 1995

A hearing on defendant's Demurrer and Plea in Bar to plaintiff's Amended Motion For Judgment was held on June 21, 1995, in this case. The Amended Motion For Judgment was filed after the court sustained defendant's Demurrer to the original Motion For Judgment. The issue now as before is whether the plaintiff has stated a claim for payments due under the parties' written Power Purchase and Operating Agreement (the PPO or the contract). A demurrer tests the legal sufficiency of the pleading, and for these purposes, the facts alleged are given as true which are well pleaded. *Bellamy v. Gates and Gill*, 214 Va. 314 (1973).

The parties, Westmoreland-LG&E Partners (WLP), plaintiff, and Virginia Electric and Power Company (Virginia Power), defendant, are electric power companies supplying power to consumers and businesses in Virginia and other places. WLP is a Virginia general partnership operating as an independent power producer. Virginia Power is a Virginia corporation operating as a publicly regulated electric utility.

The parties entered into a contract in 1989, restated in 1991, whereby WLP agreed to provide electrical power to power facilities operated by Virginia Power through North Carolina Power in North Carolina. WLP

built a power plant in North Carolina to provide the electrical power Virginia Power agreed to purchase under the contract. This plant has generated power exclusively for Virginia Power since it became operational. Essentially, under the contract WLP agreed to provide electrical power from its power plant when Virginia Power decides it is needed. WLP's claim is that under the contract Virginia Power is liable for payment during forced outage days and seeks a money judgment for those amounts. Virginia Power's Demurrer questions whether WLP has stated a claim under the contract, and its Plea in Bar seeks to have WLP's claim of constructive fraud dismissed under the statue of limitations.

The Amended Motion for judgment is in three counts. The first is essentially the same contract claim made in the original motion for judgment except that the number of days for which WLP seeks payment has been increased. WLP has reasserted this claim asking the court to reconsider its ruling that as pleaded the facts alleged do not constitute a cause of action for breach. The second count is new, a claim of constructive fraud. Virginia Power asserts that the statute of limitations bars this count. The third is also a contract claim seeking payment for eight days of dependable capacity payment. WLP argues that this count is an alternative breach of contract claim which accepts the court's prior interpretation of the parties' contract on the first demurrer.

The court sustained the demurrer to the original motion for judgment ruling that WLP had not alleged an action for breach because by the terms of the PPO agreement Virginia Power was not obliged to make payments when WLP failed to provide dependable capacity. Dependable capacity is a rated level of electricity WLP is capable of providing. The court accepted Virginia Power's position that section 10.15(d) of the PPO allows reduced payments even down to zero for days when plaintiff fails to deliver more than 45% of the dispatched level of power (the actual amount of power requested) according to a formula for reduction of payment provided in that section. WLP argued that payment under the PPO is due irrespective of whether capacity is actually provided. The crux of the parties' dispute is whether WLP is entitled to payment for forced outage days, days when dependable capacity is at reduced levels. WLP maintained and still maintains by Count I that such payments are due on forced outage days. WLP cites another provision of the PPO, 10.15(g), and takes the position, contrary to the Virginia Power's interpretation of this provision, that it is permitted a number of forced outage days without interruption of capacity payments. On the earlier ruling the court accepted Virginia

Power's argument that 10.15(g) only applied to liquidated damages WLP is entitled to for forced outage days in excess of those allowed under the contract. As such, the court ruled this section is an independent provision of the contract determining the amount of liquidated damages as a separate matter.

The new second count alleging fraud is based on the allegation that prior to and after the execution of the PPO agreement, Virginia Power represented to WLP that capacity payments would be unaffected by forced outage days. It is alleged that it was not until 1994 that Virginia Power changed its position that the PPO did not require it to make capacity payments on forced outage days. Virginia Power argues that the two year statute of limitations in § 8.01-243(A) bars this count because WLP first knew of this inconsistency when the PPO was entered into as restated in 1991, two years beyond the filing date of this action. In addition, Virginia power states that WLP cannot have reasonably relied on any representation of how the dependable capacity payments work between the parties because WLP is fully capable of understanding the meaning of the PPO agreement. WLP has not alleged reliance before entering the contract. Lastly, this count should not proceed, according to Virginia Power, because a claim of constructive fraud cannot be sustained without an allegation of a special relationship which WLP has not pleaded.

Count III, WLP contends, accepts the basis for the first ruling and has nothing to do with the payments due for forced outage days. Thus, the liability does not arise from the application of Section 10.15(d) but arises from Virginia Power's failure to satisfy certain contract conditions in order to be relieved of any obligation to make those payments. Section 10.15(d) is not implicated or involved in this count for damages under the parties' contract according to WLP.

The question a demurrer raises, of course, is whether the pleading states a claim upon which relief can be granted, whether a cause of action, legally cognizable, is asserted. *Lentz v. Morris*, 236 Va. 78 (1988). As such, a demurrer tests the legal sufficiency of a pleading, not matters of proof. *Luckett v. Jennings*, 246 Va. 303 (1993). In ruling on this demurrer and the previous one, the court is free to examine not only the allegations set out in the motion for judgment but also the PPO agreement attached to it and made a part of the pleading. And while neither of the parties have challenged the court's right to do this, the approach Virginia Power has taken in arguing its demurrer is that the contract as read does not establish a breach under the facts as a matter of contract interpretation or construc-

tion. On reconsideration it is too early on demurrer for the court to get into interpreting the parties' agreement if the motion for judgment alleges facts that would permit a recovery under the contract terms. The office of a demurrer is to only test the facts alleged as to their legal sufficiency to establish a cause of action. The question is, when stated, do the facts alleged support a claim. Here they do. WLP's claim is that while there may be a reduction in dependable capacity during forced outage days, yet there is a right of recovery according to its view of the contract terms. To the extent of any doubt, for purposes of consideration of the demurrer, the doubt must be resolved in favor of the construction given the contract by WLP in its pleading. *Fun v. Virginia Military Institute*, 245 Va. 249, 253 (1993). For now the important consideration is that under either theory of contract WLP advances, under count I or count III, a claim on the facts of the pleadings is stated. The court worries that to dispose of the contract matter now by demurrer would reach the merits of the case when on the face of WLP's pleading, its position arguably could be correct. A decision on whether this position has merit is better left for later proceedings, summary judgment, or trial.

Accordingly, on reconsideration, the court will reverse itself and say that count I as stated constitutes a cause of action as does count III.

Regarding the second count. WLP alleges that it did not know or have reason to know that Virginia Power would not honor a commitment to make payments during forced outage days under the contract until 1994. This allegation is sufficient to bar the applicable statute of limitations under § 8.01-243(A). Also, count II alleges reliance and all the other needed elements of fraud. Further, it is not necessary to allege any special, confidential, or fiduciary relationship in order to support a claim of constructive fraud. The task WLP has ahead as to count II is to show that is a victim of fraud under of contract argued by Virginia Power to be clear, plain, and direct enough to be understandable. For these reasons, the Plea in Bar and the demurrer as it relates to count II are overruled.

February 5, 1996

On December 12, 1995, came the plaintiff, Westmoreland-LG&E Partners and brought on its Motion To Compel, and it was argued by counsel.

Plaintiff seeks discovery of defendant, Virginia Electric and Power Company, (1) Vision 2000 Program, (2) documents concerning contracts with other non utility generators, (3) documents concerning Virginia Pow-

er's 1992 rate case and (4) Virginia Power's internal budgets. At the hearing WLP dropped its request for Virginia Power budgets.

In resisting the request for the materials Virginia Power argues that its Vision 2000 Program was devised to analyze and assess its operations to ensure that it operates competitively. Virginia Power contends it would be burdensome to produce the Vision 2000 Program documents because the volume would be overwhelming. Likewise, WLP's interrogatory request that all Vision 2000 Program participants be identified would require naming countless Virginia Power employees. Moreover, Virginia Power maintains, disclosure of its Vision 2000 Program documents would disclose confidential information concerning its operations and subject it to an unfair competitive advantage at the hands of WLP whose affiliates are its competitors.

The court denies WLP's requests for discovery of the Vision 2000 Program materials. While I agree with Virginia Power that the production and discovery of the Vision 2000 Program materials could be burdensome and could reveal confidential data, there is, moreover, no showing that discovery of this information would lead to information that would be relevant to the dispute of the parties over their contract for the claimed dependable capacity payments.

With regard to item (2), PROMOD is a Virginia Power computer program on which it says information concerning its contracts with non utility generators is entered. Virginia Power maintains it has produced PROMOD information concerning its contract with WLP but that disclosure of information with other contractors is irrelevant as none of these arrangements are like the contract under dispute with WLP. On the one hand Virginia Power states that PROMOD includes data regarding non utility generators and on the other maintains that it has given over PROMOD information relating to WLP, which, of course is a utility generator. The court requires that Virginia Power allow discovery of all PROMOD information concerning any and all other utility generators but not those of non utility generators.

Finally, as to the 1992 rate case, WLP maintains its investigation disclosed that, in its 1992 rate case before the State Corporation Commission, Virginia Power used estimated payments to WLP. After first resisting the request on the ground that there was no such reference, Virginia Power later conceded there was such a reference and turned the information over to WLP but maintains the rest of the filings in 1992 are irrelevant. The court decides that Virginia Power should provide any and all other esti-

mated payments to other utilities made in the 1992 rate case under the same or similar contract provisions that are at issue here.

## March 18, 1996

On March 11, 1996, the parties were before the court on defendant's motions for summary judgment and *in limine* and on plaintiff's motion *in limine*.

Defendant, Virginia Power, relies on *Doswell Limited Partnership v. Virginia Electric and Power Co.*, 251 Va. 215 (1996), and on plaintiff's change of position noted in discovery in renewing the argument that the parties' contract, which is the subject of this suit for damages, is clear and unambiguous. Thus, Virginia Power maintains the taking of extrinsic evidence is not warranted. Plaintiff (WLP) responds with the same defense asserted many times before: that the parties' contract is indeed ambiguous and extrinsic evidence is needed to discern the parties' intentions.

As before, the court will not discuss fully the facts and matters revolving around the parties' dispute. This has been done before in the court's August, 1995 letter. Suffice it to say, the case is about whether Virginia Power is liable for payments it otherwise owes WLP for electric power WLP provides under the parties' contract. The question is whether Virginia Power owes the payments for forty-three days claimed when on those days the actual generation of power did not exceed 46% of the amount Virginia Power requested of WLP. The issue is whether WLP is entitled to payments for those days; WLP claims payment is due because the contract formula for reduction of payment does not apply to those days. WLP contends that after the court reversed itself in August, 1995, and decided then that an earlier decision sustaining a demurrer was improvident, and after the court denied Virginia Power's motion for partial summary judgment in January, nothing has changed. Thus, this motion ought to be denied. Virginia Power, on the other hand, argues that *Doswell* supports its position, namely, that in power company contract disputes, as here, extrinsic evidence is not allowed. It also contends that WLP has made a "180°" change in position with respect to whether the days it claims payment for were a mix of declared days and triggered days. Now, Virginia Power maintains discovery discloses a shift in WLP's position to claiming the days claimed for payment are all declared, not triggered.

As to whether *Doswell* supports Virginia Power's position, the answer is yes and no. Yes, because it supplies further support by enunciating guiding principles on contract ambiguity issues; no, because while it deals with a

contract between power companies, the one at issue there is quite dissimilar to the one at hand. Regarding the asserted change of WLP in its position in discovery, the responses do indeed reveal that this has occurred, but, as Virginia Power concedes, this has no impact on its view of the contract and its construction. Its position in this lawsuit would be the same even if WLP has not changed its characterization or basis for the outage days experienced. So, we are back to the fundamental question: whether extrinsic evidence is available to discern the parties' intentions in this contract dispute. The court decides this question in the negative.

Now that the discovery period is at an end, the process has failed to yield any facts that would suggest that the parties' contract is not susceptible to interpretation as a matter of law. True, much discovery has been developed on what the custom and practice is in the industry regarding whether payments continue during outage days. There is evidence in discovery, favorable to WLP's position, that payments continue notwithstanding failure to supply power when capacity levels are requested. But these facts indicate perhaps what the norm is in the industry. We must still, however, according to the well-known principles stated in *Doswell*, first conclude that the contract is ambiguous for which evidence must thereafter be adduced to discern what the parties intended. It is my conclusion that the inquiry need go no further because, as in *Doswell* it is not the court's task to make the parties' contract when they have already done so for themselves. This is such a case. The case is one where WLP is seeking by parol evidence to make an ambiguity and then remove it, which is not the role of parol evidence in this area under *Doswell* and well-known principles.

Accordingly, for the reasons and authorities cited in briefs earlier, and for the reasons noted in *Doswell*, Virginia Power is entitled to summary judgment on Counts I and III. Section 10.15(d) expressly permits Virginia Power not to make dependable capacity payments on days for which WLP seeks payment. Those days are ones on which WLP failed to maintain power generation at greater than 45% of the specified level. Any allowance of days is for the purpose of determining the liquidated damages provision of the parties' contract pursuant to § 10.15(g). Also, Count II, alleging fraud, fails because the contract provisions are clear and thus WLP could not reasonably rely on representations of fact. More importantly, because of the clear and unambiguous language of the parties' contract, WLP has been on notice, causing the two-year statute of limitations to expire before WLP filed this action.

Accordingly, extrinsic evidence has no place in the trial and the motion *in limine* is granted. Summary judgment relief is also granted to Virginia Power on the contract and fraud claims. This leaves only the issue of proper notification under the contract provision, § 10.15(d).