**Norfolk**

KEITH MORRIS MILLER

v.

SHARON K. JOHNSON MILLER HAWKINS

No. 0106-91-1

Decided March 24, 1992

COUNSEL

Morris H. Fine (Fine, Fine, Legum & Fine, on brief), for appellant.

W. Jeffrey Overton (Rawls, Habel & Rawls, on brief), for appellee.

OPINION

**BAKER, J.**—In this appeal, we must decide whether the remarriage of Sharon Kaye Johnson Miller Hawkins (wife) terminates the obligation of Keith Morris Miller (husband) to pay spousal support to her. We find that, on the record of this case, husband's obligation was terminated by and at the time of wife's remarriage.

By decree entered on December 14, 1987, the Circuit Court of the City of Chesapeake (trial court) dissolved the parties' marriage. The decree approved, incorporated and ordered the parties to abide by the terms of a "Property Settlement and Stipulation Agreement" (the agreement) executed by the parties on February 18, 1987. Wife remarried in April 1988. Beginning in May 1988, husband discontinued making spousal support payments to wife. On May 29, 1990, wife filed a petition in the trial court requesting, among other things,[1] that a judgment be entered in her favor against husband for $10,600 in spousal support arrearages.

In response, husband asserted that the provisions of Code §§ 20-109 and 20-109.1 terminated his spousal support obligation when wife remarried in April 1988. The relevant portion of Code § 20-109 provides: "Upon the death or remarriage of the spouse receiving support, spousal support shall terminate unless otherwise provided by stipulation or contract."

Code § 20-109.1 provides, in relevant part:

Where the court affirms, ratifies and incorporates by reference in its decree such agreement or provision thereof, it shall be deemed for all purposes to be a term of the decree,

---

[1] The petition also requested a judgment for $6,800 for unpaid child support. That issue is not a part of this appeal. There was only one child born of the marriage and affected by the agreement and divorce decree.

and enforceable in the same manner as any provision of such decree. The provisions of this section shall apply to any decree hereinbefore or hereinafter entered affirming, ratifying and incorporating an agreement as provided herein. *Upon the death or remarriage of the spouse receiving support, spousal support shall terminate unless otherwise provided by stipulation or contract.* (emphasis added).

Wife argues that, when read with other provisions of the agreement, Paragraph 7 of the agreement discloses a clear intent of the parties that the husband would continue spousal support payments notwithstanding her remarriage. Paragraph 7 provides:

Husband agrees to pay Wife a reasonable sum for spousal support. Until such time as the child of the parties shall attain the age of 18 years or graduates from high school, whichever shall last occur, Husband agrees to pay Wife as spousal support the sum of $100.00 per week. Thereafter, Husband agrees to pay Wife the sum of $200.00 per week as spousal support until the child of the parties attains the age of 23 years or completes 4 years of college education, whichever event shall first occur; provided, however, that in the event Wife should pay in full the first lien deed of trust indebtedness owed against the above-described real estate prior to her re-marriage, then the weekly amount to be paid by Husband to Wife as spousal support shall be re-negotiated or set by the Court if the parties cannot agree.

Wife first asserts that Paragraph 7 created a lump sum award which is vested and may not be modified. She relies on our decision in *Mallery-Sayre v. Mallery*, 6 Va. App. 471, 370 S.E.2d 113 (1988). Her reliance is misplaced. In that case we said:

A periodic payment is a specified amount payable at designated intervals with the sum total uncertain; the amount of the payment can be modified by the court, if one of the parties can show a change in circumstances, or the amount of payment can be modified by agreement of the parties. The total amount of periodic support due is contingent upon future events; the right to each periodic payment becomes fixed and vested only as each payment is due. *See Eaton v. Davis*, 176 Va. 330, 342, 10 S.E.2d 893, 898 (1940) ("[A]limony to

accrue in future monthly installments though fixed by a final decree, is not a vested property right.") In contrast, a lump sum award is an order to pay a specific amount. The lump sum award is a fixed obligation to pay a sum certain when the decree is entered but the amount may be payable either in deferred installments or at once. That the payment method may allow for deferred installment payments does not change the character of the award. Thus, the right to the amount, whether payable immediately or in installments, is fixed and vested at the time . . . .

*Id.* at 474-75, 370 S.E.2d at 115.

Paragraph 7 provides that spousal support payments are to be made at designated intervals, with the sum total uncertain, may be modified, and that no fixed sum is vested except as it becomes due. The spousal support obligation in the agreement and decree provided for periodic payments subject to termination upon the recipient's remarriage, unless the language contained in the agreement created an exception to the termination clauses of Code §§ 20-109 and 20-109.1.

Wife asserts further that if the provisions of the agreement for spousal support did not create a lump sum award, nevertheless the agreement requires that the payments continue after her remarriage.

Husband argues that to avoid the termination provisions of those statutes, the language in the agreement must specifically demonstrate an intention of the parties that such payments continue after remarriage. While no Virginia appellate court has decided whether or what specificity is required, the decisions of several sister state courts support husband's position.

The trial court did not necessarily disagree with husband or the cases relied upon by him. In its September 28, 1990 letter to the parties, the trial court said:

The Court determined that spousal support in this instance did not terminate upon the remarriage of the wife because it was otherwise provided by the stipulation agreement that the husband would pay spousal support in the amount of $100.00 until such time as the child of the parties attained the age of

eighteen years or graduated from high school. The language in the agreement is clear and unambiguous and is in compliance with the exception provided for in Section 20-109.

The trial court's letter tracks a portion of the language contained in Paragraph 7 and the *a vinculo* decree; however, it fails to reference the phrase in the agreement, "whichever event shall *last* occur" (emphasis added). The first sentence of that paragraph requires husband to pay spousal support without reference to remarriage. Thereafter, the conditions and amounts to be paid are set forth. The second sentence requires husband to pay spousal support at the rate of $100 per week until the child attains eighteen years or graduates from high school, "whichever shall *last* occur" (emphasis added). That sentence leaves to speculation what husband's obligation would be if the child failed to graduate from high school. Although the next sentence creates a contingent obligation to pay college expenses, it fails to clarify husband's obligation should the child not graduate from high school. We can only speculate as to the parties' intention if that were the case.

Wife further argues that the last sentence of Paragraph 7, when read with Paragraph 2 of the agreement, clarifies the matter. In Paragraph 2, husband agrees to transfer to wife his interest in jointly owned real estate, subject to the lien of a deed of trust against the property. The last phrase of Paragraph 7 contains the only reference to remarriage in the entire agreement. Then it refers only to a contingency that might occur "prior to her remarriage." The phrase fails to specify what spousal support payments, if any, must be made subsequent to remarriage. The agreement contains no clear requirement that spousal support would continue notwithstanding wife's remarriage.

The foregoing analysis returns us to the issue raised by husband: If spousal support payments are to continue after remarriage of the recipient, must the agreement or decree include specific language disclosing that to be the intent of the parties? We adopt the views expressed in several opinions[2] of appellate courts in sister states and hold that the agreement must contain clear

---

[2] *See, e.g., Edwards v. Benefield*, 260 Ga. 238, 392 S.E.2d 1 (1990); *In re Marriage of Williams*, 115 Wash. 2d 202, 796 P.2d 421 (1990); *Peterson v. Lobeck*, 421 N.W.2d 367 (Minn. Ct. App. 1988); *Greene v. Kunkel*, 729 S.W.2d 34 (Mo. Ct. App. 1987); *In re Marriage of Glasser*, 181 Cal. App. 3d 149, 226 Cal. Rptr. 229 (1986).

and express language evincing the parties' intent that spousal support will continue after remarriage; otherwise, remarriage terminates the obligation.

(2) The public policy clearly declared by Code §§ 20-109 and 20-109.1 is that spousal support does not survive the recipient's remarriage. To create an exception to that policy, the agreement must be equally clear. If the parties intended that spousal support would continue after remarriage, they could have included such a requirement in the agreement. We do not construe the language contained in the agreement before us to establish an intent that husband was obligated to continue spousal support to wife after her remarriage.

For the reasons stated, we reverse that portion of the trial court's decree which held that husband's spousal support obligation continued after wife's remarriage. The judgment for $10,600 awarded in favor of wife against husband is reversed and final judgment is entered in favor of husband. Nothing contained herein shall be construed to affect the judgment entered against husband for child support arrearages.

*Reversed.*

Moon, J., and Willis, J., concurred.